### In re ATCHLEY'S WILL.

(Surrogate's Court, Ontario County. February 5, 1908.)

1. WILLS—TESTAMENTARY CAPACITY.

Evidence in proceedings to probate a will *held* to show that, at the time of executing it, testatrix knew the character and extent of her property, and comprehended her relationship to those naturally the objects of her bounty, and the provisions of the instrument, and so had testamentary capacity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 96–100, 137–161.]

2. SAME—UNDUE INFLUENCE.

To avoid a will on the ground of undue influence, such influence, and not mere opportunity therefor, must be shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 385, 386 ]

In the matter of the probate of the will of Emeline Atchley, late of the town of Manchester. Will admitted to probate.

Willis C. Ellis (Thomas D. McCarrick, of counsel), for proponents E. E. Thatcher and William O. Thatcher.

E. A. Griffith, for contestants Mary I. Galusha and Emory J. Woods.

Frank A. Christian, special guardian for Jessie L. Whitney and Beatrice L. Whitney, appears in person, and contests the validity of the will.

DITMARS, S. . It is conceded that Emeline Atchley, the above-named decedent, was very frail, delicate, and feeble. ·She died July 11, 1906, aged 79 years. About 7½ months preceding her death, November 27, 1905, she executed the contested instrument, purporting to be her last will and testament. Her signature to the instrument, although she congratulates herself on having written it without the use of glasses, indicates a trembling, uncontrollable hand in writing. It is further practically conceded that for some 14 or 15 years her head and her hands had shaken or trembled almost continuously. This is said to have been caused by a fall. There is no information as to what direct effect it had upon the mind, if any, except that Dr. Turk considered it palsy, and stated that palsy was a breaking down of the nerve centers of the spine and brain. She and her husband, Wesley D. Atchley, had been devoted to each other through a long period of over 50 years of married life. In the summer of 1905 Mr. Atchley became ill and died in October following. Mrs. Atchley seems to have deeply mourned his illness and his death. She wanted to assist in his care and nursing, but seems to have been so feeble that she was not allowed to do so. Many friends and relatives called, and she does not appear to have recognized them, or, if she did, she paid little or no attention to them. She did some strange things which impressed the witnesses, and would indicate that at the time she was irrational, such as hiding dishes in bureau drawers, trying to cook without a fire, pitting cherries, and placing the pits and cherries in the same dish, pouring the water in which she had washed back into the reservoir of the stove, imagining some of her deceased relatives were in the front room of the house, etc. .These incidents occurred at different times during the last year of her life, and indicates that senile dementia was affecting her mental and physical condition. Were there no other facts, the inevitable conclusion would be to deny probate because of mental incapacity. But there are other facts to be considered.

She evidently had her bright days, as well as her dark ones. Some persons whom she did not appear to recognize at one time she knew and conversed with at another and later time. She seems to have acquired some antipathy against Mrs. Wells, the nurse, which, to an extent, doubtless influenced her in some of the things she did. Some explanations are given for other things which she did that appeared irrational. Dr. Pratt, a prominent and reputable physician, called upon her professionally three times during 1905, conversed with her, not only regarding her condition, but also in regard to other subjects, such as the history of an old family clock, and prescribed for her;

and in all that she said and did he did not notice any symptom of a diseased mind. Dr. Pratt's testimony is contradictory to that of Dr. Turk, who states that she was in an advanced stage of senile dementia during this time. When Mr. Ellis, the attorney for the proponents herein, who prepared a will for Mr. Atchley, was at the house in September, 1905, Mrs. Atchley was present and conversed with him and Mr. Atchley concerning the contents of the will, stating that she would be satisfied with the use and income of the property, giving the names of certain relatives, discussing the advisability of leaving a legacy to the daughter of Mrs. Galusha, the contestant herein, agreeing upon an amount to be left for the care of a cemetery lot, and as to who should be the executor of the will. At this time she apparently knew who were Mr. Atchley's relatives as well as her own, and something as least in regard to Mr. Atchley's property.

Being exceedingly religious, she talked a great deal on that subject, read her Bible, repeated extracts from it, and was devoted to prayer. Her pastor, Rev. L. S. Boyd, called at the house some six or eight times a year until Mr. Atchley's illness, and then four or five times a week until after his death and burial, and once or twice after that. He conversed with Mrs. Atchley upon various topics, and he thinks in 1905 she talked about their property, told him of some of their relatives, and talked with him after Mr. Atchley's funeral; and in all that she said to him or did in his presence he did not notice anything that impressed him as irrational. When Mr. McCarrick called to see her in regard to her husband's estate, which was some time during the latter part of October or the fore part of November, 1905, she told him she wanted him to draw her will, and would let him know when she was ready, as she had not then determined just how she wanted it.

Her sister-in-law, Mrs. Cynthia Ann Thatcher, was with her continuously from the time of Mr. Atchley's death. For some weeks they lived at Mrs. Atchley's home in Clifton Springs, and then they went to the home of Mrs. Thatcher at Seneca Castle; and it was here the instrument was made and executed. Mr. McCarrick, in response to a letter from Mrs. Thatcher, which she says was dictated by Mrs. Atchley, goes to the house on the 27th of November. This is shortly after she had gone over to Seneca Castle. Mrs. Atchley meets him at the door, invites him in, tells him she is glad he came, because she is ready to have her will prepared. They speak of the witnesses, and Mr. McCarrick goes out and gets Dr. Sargent. He tells the doctor of her feeble condition, the necessary understanding which she must possess in order to make a valid will, and asks the doctor to come over and talk with and examine her before any instrument is prepared. The doctor does so. She tells the doctor of her property, of the fact that her husband was dead, and when he died, of her relatives, talks of other matters with him, and the doctor says she was competent. She directs the attorney as to the provisions of the will, and as to whom and how much she desired to bequeath or devise. Mr. McCarrick then prepares an instrument and reads it over to her in the presence of Dr. Sargent. She says that he left out one bequest which she had directed him to put in. He says that was true, and noticed it when she

called his attention to it. He then prepared another will, and, finally, when all the bequests were as she desired, it was executed with all due formality. If what Dr. Sargent and Mr. McCarrick say is true, and this court cannot believe that they have testified falsely, then on that day she must have known the character and extent of her property so far as she can be expected to know it. She must have comprehended her relationship to her nephews and nieces and others, and she certainly retained in mind these conditions while two instruments were prepared and read over to her and one of them was executed, and understood the conditions of the instrument when it was executed.

The court may be governed by her physical and mental condition at the time of the execution of the instrument. Remsen on Preparation & Contest of Wills, p. 377. If she then knew the character and extent of her property, and her relationship to those who were naturally the objects of her bounty, and comprehended the provisions of the instrument, and held them in mind sufficiently long to execute the same, she was competent to make a valid will. Delafield v. Parish, 25 N. Y. 9; Matter of Snelling, 136 N. Y. 515, 32 N. E. 1006. Then, again, the provisions of the instrument itself are not unreasonable, and are what might be expected of most any sane person of her temperament and disposition. She told why she made certain bequests, and gave reasons for not making others. Mrs. Galusha, one of the contestants, was prosecuting an action involving the validity of the will of Mrs. Galusha's father, who was the brother of Mrs. Atchley. Some of her relatives had plenty to do with, while others were not so well to do. She evidently loved some more than she did others. E. E. Thatcher and Olin Thatcher, the principal beneficiaries, were born in the same house where she lived, and she had attended and cared for them while they were babies and youngsters, and regarded them somewhat as she might her own. There is no doubt in my mind but that the instrument expresses her desire, and is as she would have had it had she been ever so strong and healthy.

I do not find sufficient evidence to hold that she was unduly influenced in making any of the provisions of the will. It is alleged that Mrs. Cynthia Thatcher unduly influenced her, but I do not think the allegation is sustained by any positive proof. It is true that Mrs. Atchley was with Mrs. Thatcher during the last eight months of her life, and at the time the will was made she was living with Mrs. Thatcher, but there is no proof that Mrs. Thatcher influenced her, or attempted to do so. Mrs. Thatcher received only a few specific articles of clothing and some furniture, and she has declined to accept of these. It may be that she had an opportunity to try to influence her, but that is not sufficient.

The question of fact as to the competency of the testatrix is a very close one, but, after a careful study of and consideration of the evidence, I must admit the instrument to probate as her last will and testament.

A decree may be entered accordingly.